RUTHVEN BROTHERS v. AMERICAN FIRE INSURANCE COMPANY, Appellant.

**Insurance:** WAIVER. A policy provided that a statement of loss stating, under signature and oath of assured, time and origin of fire and interest of assured, should be filed within sixty days of loss. That there should be no waiver by any act, requirement, or proceeding of insurer as to appraisals and examinations contemplated by the policy. It was further provided that "this policy is accepted subject to these conditions and such other provisions, agreements, or conditions as may be added or indorsed thereon *and no officer, agent, or other representative of this company shall have power to waive any provision or condition of this policy* except such as may be the subject of agreement indorsed or added, and as to such, no officer, agent, or representative shall have such power or be held to have waived such provisions, etc., unless such waiver shall be written or attached hereto." A. had power to issue a policy as local agent. He was advised of a loss under a policy written by him, within sixty days. He advised the company and wrote assured that adjuster would come in a few days, but no statement of loss was ever filed. A. always urged insured to file proofs. M. was a special agent and adjuster of insurer, but whether a general adjuster does not appear. W. was the adjuster of another company interested in the same loss. M. arranged with W. that the latter should investigate the loss and report to defendant company. Within sixty days after loss W. appeared, made estimates of the material and labor on the buildings, located them and fixed their dimensions. After the expiration of sixty days, M. told plaintiff that the loss was all right and ought to be paid, and that W. had made a statement regarding the loss. W. did

not agree to pay, or to do anything until plaintiff had tried to recover the loss from a third person supposed to have caused it. *Held,* such conditions in a policy are valid. Sufficient notice was, probably, given. Local agents had no power to waive proof of loss, and the notice, alone, was not enough; and said agents did not, at all events, waive proofs. Neither could they bind the company by agreeing to send an adjuster. M. could not delegate his authority to adjust. W. was manifestly not clothed with either real or apparent authority to waive proof of loss, and, at all events, what he did, did not amount to a waiver. It is not intended to be held that general agents might not waive such provisions in a policy.

*Appeal from Palo Alto District Court.*—HON. GEORGE H. CARR, Judge.

MONDAY, OCTOBER 22, 1894.

ACTION at law upon a policy of fire insurance. Trial to a jury, verdict and judgment for plaintiffs, and defendant appeals.—*Reversed.*

*R. W. Barger* and *McCarty & Linderman* for appellant.

*B. E. Kelly & Soper, Allen* and *Morling* for appellees.

DEEMER, J.—On the thirtieth day of April, 1891, the defendant issued to plaintiffs its policy of assurance, insuring them against loss or damage by fire for the period of one year upon an ice house situated in Palo Alto county. On the fifteenth day of October, and during the life of the policy, the building was totally destroyed by fire. The company having failed and neglected to pay the loss, this action was brought to recover the amount of the policy. Upon the trial of the case in the court below it was conceded that the property was destroyed by fire, and was worth more than the amount called for by the policy. It was also admitted by the plaintiffs that they did not give the preliminary notice and proof of loss required by the

policy and by McClain's Code, section 1734, but they averred that the defendant, through its officers and agents, had waived the same. At the conclusion of the testimony for plaintiffs, defendant moved for a verdict, on the ground that no such waiver had been proved. The court overruled this motion, and this ruling is assigned as error. Ingersoll, Howell & Company, of Des Moines, were the local agents of the defendant, who issued the policy in suit. They had the power "to receive proposals for insurance against loss or damage by fire, to name rates, receive premiums, and to countersign, issue, renew, and consent to the transfer of policies of insurance, signed by the president and secretary of the company, subject to the regulations of the company and the instructions of its officers." The evidence also shows that they sometimes received notices and proofs of loss, and forwarded them to the defendant company. Shortly after the fire, and on the same day, one F. H. Giddings, through whom the policy of insurance was procured, at the request of one of the plaintiffs, sent to Ingersoll, Howell & Company the following telegram:

"*Ingersoll, Howell & Co.*:

"Ice house numbers 3 and 4 burned to day. Will write.                                F. A. GIDDINGS."

On the next day he wrote as follows:

"*Ingersoll, Howell & Co., Des Moines, Iowa.*

"GENTS:—The ice house numbers 1, 2, 3, and 4, burned to the ground yesterday. We have one thousand dollars insurance on number 3 and 4 in American Fire of Philadelphia, policy number 3,505. When can you have the adjuster come and look it over?

"Respectfully yours,
(Signed)                              "F. H. GIDDINGS."

In a few days thereafter, Giddings received a reply to these communications from Ingersoll, Howell &

Company, which stated, in effect, that they had received the letter and telegram, and would have the adjuster come in a few days. On receipt of the letter and telegram from Giddings, Ingersoll, Howell & Company "mailed the usual notice of loss to the company." On the nineteenth day of October a man by the name of Werniemont, who was the adjusting agent of the Dubuque Fire & Marine Insurance Company, which was also interested in the loss, appeared upon the scene, and made estimates of the material and workmanship on the building, figured the dimensions of and located the buildings. The authorities and powers of this agent will be referred to hereafter. Nothing further being heard from the company, Giddings, at the request of plaintiffs, again wrote or telegraphed Ingersoll, Howell & Company regarding the loss, and on December 11 received the following telegram: "American interest left with the Dubuque Fire & Marine. Fill proofs, and send American's to C. E. Bliven, Manager, 218 La Salle Street, Chicago, Ill." And a few days thereafter received the following letter:

"DES MOINES, IOWA, December 11, 1891.

"*F. H. Giddings, Esq., Ruthven, Iowa.*

"DEAR SIR:—Your telegram received yesterday, and we have this morning telegraphed you as follows. [Then follows a copy of the telegram above set forth.] "We will say that immediately on the report of the loss last October we gave the necessary notice to the companies' managers at once. A few days after that, the special agent of the American Fire & Marine were both in Des Moines, and, it seeming unnecessary for both to go to Ruthven, the American special turned over the loss to the Dubuque Fire & Marine special, for him to settle both. We understand the American special, Mr. C. N. Miller, notified Ruthven Bros. to this effect, and also inclosed proofs

of loss for them to fill out. Since that time we have paid no attention to the matter, and do not know what action has been taken by the Dubuque Fire & Marine people. We did not answer your telegram yesterday, anticipating the arrival in the city of the American special. We now suggest, if you have not already done so, that the assured make out proofs of loss, and send them by registered mail or express, to make sure that they reach the proper parties of both companies. Send proofs to C. E. Bliven, Manager, 218 La Salle Street, Chicago, Ill. As we understand, the state laws give sixty days in which to file such proofs. We do not understand, from all our conversation with the American special, that they intended to take advantage of you in any way, but it is well in all cases to take the necessary steps in matters of that kind. Do not the assured consider that the loss was due to the neglect of the Des Moines Ice Company in originating the fire, and do they expect to make any claims in court against these people for the loss sustained? In that case, it strikes us, it might be well to confer with the insurance companies interested on your loss, and join with them in making any such claim, provided you have the proofs to substantiate it. We trust you will have no trouble in getting matters settled as they should be, and do not anticipate that you will, so far as the American is concerned. We trust this is satisfactory, and to hear from you again soon.

Yours, truly,<br>
"INGERSOLL, HOWELL & CO."

C. N. Miller is a special agent and adjuster of the defendant company, living at Des Moines. Whether he is a general adjuster, or acts as such in special cases, does not clearly appear. Immediately upon receipt of the notice of loss from Giddings, Ingersoll, Howell & Company notified Miller of the loss, and a short time thereafter Miller and Wernie-

mont came into the office of Ingersoll, Howell & Company, and it was there arranged between them that Werniemont should go and investigate the plaintiffs' loss, and report to the defendant company. Werniemont went pursuant to their arrangement, and made the investigation before stated. Some time in January, 1892, and after the sixty days had expired for making proofs of loss, Miller himself went to Ruthven, where plaintiffs lived, and there had a conversation with the plaintiffs, in which he stated, in substance, that he did not wish to go to the site of the property; that he had seen Werniemont before he came up, and had a talk with him after he went back, and that he was satisfied that it was all straight and right, and ought to be paid, but that plaintiffs ought to commence an action against the ice company for their negligence in destroying the property, and if they (plaintiffs) fought them they would take care of us (plaintiffs); that Werniemont had come to investigate the liability of the ice company when he was first there. Miller did not agree to pay the loss at any time, however, and did not agree to do anything until plaintiffs had tried to recover from the ice company.

The foregoing facts are established by plaintiff's testimony, and are relied upon to prove a waiver of the provisions of the policy requiring notice and a statement of the loss within sixty days from the date of the fire, and of the statute requiring practically the same thing. The defendant introduced no testimony, and the question in the case is, do these facts establish a waiver? The policy required this statement of loss to be filed within sixty days after the fire, unless such time was extended in writing by the company, and provided that the statement should be signed and sworn to by the insured, and should state the time and origin of the fire, according to his best belief, the interest of the assured in the premises, etc. The statute (McClain's

Code, sec. 1734) requires the assured to give notice in writing, accompanied by an affidavit stating how loss occurred, and the extent of the loss, within sixty days from the time the loss occurred. These matters were conditions precedent to a right of recovery on the policy, and, unless waived, a failure to comply with them is fatal. The policy also provided: "This company shall not be held to have waived any provision or condition of this policy, or any forfeiture thereof, by any requirement, act, or proceeding on its part relating to the appraisal or to any examination herein provided for; and the loss shall not become payable until sixty days after the notice. * * * *This policy is made and accepted subject to the foregoing stipulations and conditions,* together with such other provisions, agreements, or conditions as may be indorsed hereon or added hereto; and *no officer, agent, or other representative of this company shall have power to waive any provision or condition of this policy,* except such as by the terms of this policy may be the subject of agreement indorsed hereon or added hereto, and as to such provisions and conditions, no officer, agent, or representative shall have such power, or be deemed or held to have waived such provisions or conditions, unless such waiver, if any, shall be written upon or attached hereto; nor shall any privilege or permission affecting the insurance under this policy exist or be claimed by the insured unless so written or attached."

6        The plaintiffs contend that the notice which they sent to Ingersoll, Howard & Company, of the loss was sufficient, or, if not sufficient, that the defendant company raised no objections thereto, and that they were led to believe that they were sufficient. They further urged that by sending Werniemont to examine into the loss after the receipt of the notice, the company waived any further proofs, and accepted the notice as being sufficient. It is these claims that we now proceed to

examine in the light of the facts and adjudicated cases.

Ingersoll, Howell & Company were, as we have already stated, local agents of the defendant company. They had nothing to do with the adjustment of losses. The mere fact that an agent is shown to have authority to issue policies and countersign the same does not warrant an inference that he has authority to adjust and settle losses, or waive the performance of the conditions in the policy; and the fact that he assumes to do so does not even tend to establish his authority. 2 Wood, Ins. 915; *Bush v. Insurance Co.*, 63 N. Y. 531; *Bowlin v. Insurance Co.*, 31 N. W. Rep. (Minn.) 859; *Smith v. Insurance Co.*, 15 Atl. Rep. (Vt.) 353; *Kyte v. Assurance Co.*, 10 N. E. Rep. (Mass.) 518; *Knudson v. Insurance Co.*, 43 N. W. Rep. (Wis.) 954; *Lohnes v. Insurance Co.*, 121 Mass. 439. As the policy does not name the person to whom the notice may be sent, but merely provides for notice to the company within sixty days, it may be true that notice can be given to the agent who issued the policy. And where, as in this case, it is further shown that the agent mailed a notice of loss to the company, it is more than probable that the notice was given to a proper person, and was sufficient as a notice to bind the company. *Insurance Co. v. Taylor*, 73 Pa. St. 342; *Argall v. Insurance Co.*, 84 N. C. 355; *Loeb v. Insurance Co.*, 12 S. W. Rep. (Mo. Sup.) 574; *Insurance Co. v. Helfenstein*, 40 Pa. St. 289; *Pennypacker v. Insurance Co.*, 80 Iowa, 57, 45 N. W. Rep. 408. This notice, however, was not accompanied by proofs of loss, and, as we have already seen, the local agents had no authority to waive them.

The answer of defendant's local agents to the plaintiffs that an adjuster would be sent at once was not binding on the company, for they had no authority in matters connected with the adjustment of the loss.

*Von Genechtin v. Insurance Co.*, 75 Iowa, 544, 39 N. W.
Rep. 881. Could it be said that Ingersoll, Howell &
Company had authority to waive proofs of loss, yet it
is apparent from their letters and telegrams to Gid-
dings, who was representing the assured, that they did
not waive them. They both telegraphed and wrote
plaintiffs within the sixty days to file proofs of loss,
and directed them where to send them. It is not shown
that these agents had authority to notify or to send an
adjuster to examine into the loss, and the plaintiffs had
no right to rely upon any statement from them that
they would.

II. After notifying the local agents of the defend-
ant company of their loss, an adjusting agent of the
Dubuque Insurance Company appears, and
makes some figures regarding the loss, with the
help of plaintiffs' clerks; and it is claimed that
this is a waiver of the requirement of the statute and
the terms of the policy. There is no proof that he
was sent there by any general agent of the defendant
company. The most that can be claimed from the
testimony is that he went at the request of Miller, the
special agent and adjuster for the defendant company
in this state. Just what Miller's powers were does not
fully appear. This much, however, is shown: that he
was a special agent, had a general oversight over the
local agents in this state, and was either a general
adjuster or acted specially in regard to such losses as
he was directed to by the company. He was not, so
far as shown, empowered to delegate his authority.
Whatever may have been his powers, we are clear that
as to the matter of adjusting losses he had no right to
delegate his authority. The business of adjusting
losses, carrying with it the inherent power of waiving
conditions in the policy and dispensing with proofs of
loss, as well as determining the rights and liabilities of
coinsurers, is one requiring special skill and peculiar

fitness, and it is a matter of common business knowledge that agents are selected for this work because of their special skill and fitness. It is elementary that when an agent is so selected he can not delegate his powers. *Waldman v. Insurance Co.*, 8 So. Rep. (Ala.) 666; 1 Am. and Eng. Encyclopedia of Law, 368. The defendant company, so far as shown, did not direct, and had no notice of, the appointment of this subagent, and they did nothing which ought to estop them from denying his authority. As it is attempted to show a waiver by the company of the conditions of the policy by the fact that they investigated the loss, it is incumbent upon the plaintiffs to show that they were misled by some act of the defendant indicating that it had dispensed with the proof of loss. The defendant itself did no act which would indicate such a waiver, and it is certainly permitted to show that what was done was without its knowledge, consent, or authority. Werniemont was manifestly not clothed with authority, either real or apparent, to waive proofs of loss. *Barre v. Insurance Co.*, 76 Iowa, 609, 41 N. W. Rep. 373; *Hollis v. Insurance Co.*, 65 Iowa, 454, 21 N. W. Rep. 774. Again, if this adjuster had authority to visit the premises, and make report of the loss, he did or said nothing to indicate that formal proofs were not required. It is provided in the policy "that the company shall not be held to have waived any provision or condition thereof, or any forfeiture thereof, by any requirement, act, or proceeding on its part relating to the appraisal or to any examination provided for in the policy." Plaintiffs then had no right to rely upon this examination as a waiver of the proofs of loss, even if authorized. Without such a provision in the policy, it has been held that investigation by an adjuster who does not say anything to the assured is not a waiver. *Busch v. Insurance Co.*, 6 Phila. 252; *Insurance Co. v. Slump*, 16 Ill. App. 248.

Whatever the true rule may be in this respect, it is clear from what has been said that Werniemont had no authority to waive proofs of loss.

III.   Lastly, it is insisted that Miller, the special agent and adjuster of the company, who interviewed the plaintiffs after the expiration of the sixty days within which to make proofs of loss, waived performance of the condition, and agreed to pay the policy.   There is no evidence of any express promise to pay.   The most that can be said of his testimony is that he said the loss was all right, and ought to be paid, and that he had received a statement from Werniemont regarding the loss.   In the first place, it is not shown, except by the alleged declarations of Miller, that he had any authority to visit the plaintiffs.   The company made no representations to them that he would be sent.   He was a special agent, having charge of the agencies within his state, and perhaps was the adjuster of the company for this state; these facts bring the case within the rule announced in the *Barre* and *Hollis cases, supra.*   But, if this be not true, the authority of Miller, as well as of Ingersoll, Howell & Company and Werniemont was limited by the express terms of the policy, of which plaintiffs will be presumed to have had notice.   The policy provides, in substance, that no officer, agent, or other representative of the company shall have power to waive any provision or condition of the policy, except such as by the terms of the policy may be the subject of agreement indorsed thereon or added thereto.   There is some conflict in the authorities as to whether this kind of an agreement or provision is valid or not.   But we think the decided weight is in favor of the proposition that it is.   *Insurance Co. v. Gibbons*, 43 Kan. 15, 22 Pac. Rep. 1010; *Weidert v. Insurance Co.*, 24 Pac. Rep. (Ore.) 242; *Cleaver v. Insurance Co.*, 39 N. W. Rep. (Mich.) 571; *Quinlan v. Insurance Co.*, 31 N. E.

Rep.(N.Y.App.) 31; *Smith v. Insurance Co.*, 15 Atl. Rep. (Vt.) 353; *Walsh v. Insurance Co.*, 73 N. Y. 5; *Hankins v. Insurance Co.*, 35 N. W. Rep. (Wis.) 34; *Gould v. Insurance Co.*, 51 N. W. Rep. (Mich.) 455; *Clevenger v. Insurance Co.*, 3 N. W. Rep. (Dak.) 313; *Enos v. Insurance Co.*, 8 Pac. Rep. (Cal.) 379; *Kyte v. Assurance Co.*, 10 N. E. Rep. (Mass.) 518; and many other cases cited in these authorities. Whether this is the correct rule or not, it is the one adopted by this court in the recent case of *Kirkman v. Insurance Co.*, 90 Iowa, 457; 57 N. W. Rep. 953, decided since this cause was tried in the lower court. The principle was also recognized in *Zimmerman v. Insurance Co.*, 77 Iowa, 691, 42 N. W. Rep. 462; *Machine Co. v. Crow*, 70 Iowa, 340, 30 N. W. Rep. 609. We do not mean to be understood as holding that the company could not itself, through its general agents, waive these provisions of the policy. What we do hold is that the provisions we have quoted are a limitation upon the power of its local, special, and adjusting agents, of which the plaintiffs had, or are presumed to have had, knowledge, and that any agreement or waiver which they attempted to make would not be binding upon the company, because not authorized. Most of the questions which we have discussed arose upon proper objections to the testimony, as it was adduced, and which were overruled, and proper exceptions taken; the others, upon the motion of the defendent to direct a verdict. What we have said sufficiently indicates our views regarding these objections, and makes it apparent that defendant's motion should have been sustained. The judgment of the district court is REVERSED.