George C. House, Appellant, v. The Security Fire Insurance Co., Appellee.

**Insurance:** FORFEITURE: CHANGE OF TITLE. A mere option contract for the sale of property upon which an insured building is situated, and under which nothing has been done prior to a loss of the building by fire, is not such change in the title as will avoid the policy.

**Same:** ISSUANCE OF POLICY. Where no policy has in fact been issued to the insured the case will be treated and considered as if a policy in the usual form had issued.

Same: WAIVER OF FORFEITURE: AUTHORITY OF AGENT.  Knowledge on
3   the part of a soliciting agent of the future intention of the in-
sured to procure a loan upon the property, in violation of a pro-
vision of the policy requiring notice to and consent by the insur-
ance company, is not binding upon the company and will not con-
stitute a waiver of the condition.
  Furthermore a soliciting agent has no authority to waive any of
the conditions of a policy as written.

Appeal: OBJECTIONS NOT RAISED BELOW.  Where a cause has been tried
4   on the theory that the original policy involved in the action was
in evidence, when in fact a copy of the usual form was identified
and used by counsel without objection, it will be so regarded on
appeal.

*Appeal from Scott District Court.*—HON. D. V. JACKSON,
Judge.

SATURDAY, JUNE 5, 1909.

REHEARING DENIED TUESDAY, JANUARY 18, 1910.

SUIT in equity to reform a policy of fire insurance
and to recover the amount thereof because of a loss there-
under.  Defendant denied there was any policy to reform,
pleaded that it issued its regular policy to plaintiff, and
averred that the policy became null and void because of
the making of a mortgage upon the property insured, and
for the further reason that, after the issuance of the policy,
the assured made a contract to sell the property to one
Perry, which was in contravention of the terms of the
policy, in fact issued by the defendant.  Plaintiff in reply
pleaded a waiver and an estoppel on the part of the com-
pany preventing it from relying upon the alleged breach
of conditions.  Upon the issues joined there was a decree
dismissing plaintiff's petition, and he appeals.—*Affirmed.*

*Henry Vollmer* and *E. M. Sharon,* for appellant.

*Cooke & Dodge,* for appellee.

Deemer, J.—Plaintiff owned a half section of land in Iowa County, valued at something like $22,000, and, wishing to make a loan thereon, he applied to one Cranshaw, who lived at Marengo, and who was a local agent at that point of the Northwestern Mutual Life Insurance Company of Milwaukee and also the agent at the same place of the defendant insurance company. On behalf of the Northwestern Iusurance Company Cranshaw offered to make a loan for his company upon the land to the amount of $5,000. At that time plaintiff's improvements upon the land were insured in a local mutual insurance company, and Cranshaw represented that the Northwestern Company required insurance in a stock company upon the improvements as additional security for the loan. Plaintiff thereupon directed Cranshaw to draw up an application to defendant for an insurance policy of $1,800 upon the dwelling house which was on the land and paid to Cranshaw $36, the amount of the premium thereon. It was also agreed that the mutual policy upon the house should be canceled. The application was drawn up by Cranshaw and signed by plaintiff. It described the location of the property, asked for insurance in the sum of $1,800, gave a valuation and description of the dwelling house, and stated that it was occupied as a private dwelling. The applicant stated that he was the sole owner, that the property was not incumbered, gave the value of the land and a general description of the chimneys, stovepipes, number of rooms, etc., and stated that there was no other insurance. The application also stated that: "The applicant agrees that each of the foregoing answers, statements, and valuations are true and a warranty on his part, and that the accepting of this risk and the issuing of a policy of insurance thereon by the company is to be based solely upon this application." The application also contained this, "Shall we send policy to applicant or agent?" and the answer was, "Agent." From the application it

appears that it was received by defendant at Davenport,
Iowa, March 13, 1897, and was approved by its secretary
on the same day.   The policy when issued was returned
to Cranshaw and by him sent to the Northwestern Com-
pany as part security for the loan.   Plaintiff was notified
of this delivery to the life insurance company and made
no objections thereto.   He never, so far as shown, saw the
policy.   The policy became effective at least from the time
of the acceptance of the plaintiff's application by the de-
fendant company.   Something like eleven months there-
after, and in February of the year 1898, plaintiff made
another loan of $1,900 upon his land from a neighbor and
executed a mortgage securing the same upon the entire
property.   No consent to this loan was ever in fact given
by the defendant.   On September 27, 1901, the dwelling
house was destroyed by fire.   Notice was given the defend-
ant, and its adjuster visited the scene of the loss and then
informed plaintiff that his policy was void because of the
execution of the second mortgage and by reason of the fact
that plaintiff had entered into a contract for the sale of
his property.

With reference to this last matter, the record shows
that plaintiff made a contract with one Perry to sell him
his land upon which the building was located; deed to be

1. INSURANCE:
forfeiture:
change of
title.

drawn and delivered in March of the follow-
ing year.   $1,000 was paid upon the contract,
which was to be forfeited if the deal was not
closed.   The contract was in the nature of an option, and
nothing had been done thereunder at the time of the fire.
On the 1st day of March, when the option was to become
effective, the option was abandoned, and the title never
passed from plaintiff.   We may as well say in this con-
nection that under no theory of the case did this option con-
tract constitute a breach of any of the conditions of the
policy of insurance.   *Ark. Ins. Co. v. Wilson*, 67 Ark. 553
(55 S. W. 933, 48 L. R. A. 510, 77 Am. St. Rep. 129);

*Pringle v. Insurance Co.,* 107 Iowa, 742; *Erb v. German Ins. Co.,* 98 Iowa, 606.

II.    This action was brought on two theories: First, that a policy was issued to plaintiff which would entitle him to recover; and, second, that no policy was issued, and that plaintiff had an oral contract of insurance under which he was entitled to recover. In either event, he pleaded that, if there were any conditions of the policy not embodied in plaintiff's application for insurance, they should be stricken out, and the policy issued reformed accordingly, or, if no policy was issued, the court should establish an oral one which would entitle him to recover. Defendant pleaded the execution of its policy pursuant to plaintiff's application, and that it was sent to the life insurance company according to an arrangement between plaintiff and Cranshaw whereby it should be delivered to said insurance company as part security for plaintiff's loan. It further pleaded that the policy contained a provision to the effect that, if the "property insured should thereafter become mortgaged or incumbered without consent indorsed upon the policy, then the policy should become null and void." As a breach of this condition, defendant set forth the execution by plaintiff of the Harrington mortgage, and as a conclusion it averred that by reason thereof the policy became and was null and void. In reply to this plaintiff, among other things, pleaded the following:

That said half section of land was of the value of more than $22,000. That the mortgage to Harrington for $1,900 incumbered the entire half section of land, and that either quarter section of said land was ample security for all of the incumbrance evidenced by the mortgages to the Northwestern Life Insurance Company and to said Harrington, and said mortgage to Harrington in said answer complained of does not affect or increase the hazard or risk of the insurance placed on said house by the defendant. Further replying, plaintiff states: That said mortgage to Harrington was of record in Iowa County about three years

before the loss or destruction of said insured building. That the defendant during all of said time had an agency and agent at the city of Marengo, the county seat of Iowa County, and that said agent or agents did or should have known of the making of said mortgage, and, if the making of the same did affect plaintiff's right under said insurance policy, it was the duty of the defendant to have notified plaintiff that the giving of said mortgage affected the insurance under said policy. Replying further, plaintiff states that the defendant is estopped from claiming that the giving of said mortgage to Harrington avoided the insurance on his house for the reason that the defendant, by attaching to the acceptance of his proposal for insurance the condition set out in said answer, the giving of a mortgage without the consent of the company would void the payment of any loss, and defendant, knowing that plaintiff had no opportunity to know or any information in regard to such condition of said policy of insurance, led plaintiff, relying upon the acceptance of his proposal for insurance being accepted unconditionally in making said mortgage, to have it cover and include a description of the lands on which said insured building was situated or to fail to except such lands from the provisions of said mortgage, because, if he had known that the inclusion of said land would affect the insurance on his house, he could just as easily have placed the mortgage on the northwest quarter alone, or have obtained the consent of the defendant thereto.

These were the issues on which the case was tried, although the arguments of counsel cover a wider field. The record shows the following stipulation: "It is agreed between the parties to this action that a certain instrument purporting to be a copy of policy No. 14654, issued to George C. House, marked 'Dft's Ex. No. 2,' shall be received in evidence and agreed to be a true and correct copy of the original policy and application indorsed thereon, issued by the company upon plaintiff's application, and that this copy may be used in evidence the same as the original might be used if produced." Following this is the form of a policy issued by defendant, which one of defendant's

witnesses said contained the conditions always found in policies issued by it, one of which was to the effect that, if the property should thereafter be mortgaged or incumbered without consent indorsed upon the policy, it should be null and void.

We do not, in view of this record, regard it as very material whether a policy was actually issued and returned to Cranshaw and by him sent to the life insurance company, or whether no policy was in fact issued, for the rule of this court is that, if no policy is in fact issued, the case will be treated and considered as if a policy in the usual form issued by the company had in fact been issued. *Barre v. Insurance Co.,* 76 Iowa, 609; *Smith v. Insurance Co.,* 64 Iowa, 716; *Hubbard v. Insurance Co.,* 33 Iowa, 325; *Moore v. State Ins. Co.,* 72 Iowa, 414; *Goodwin v. Ass'n,* 97 Iowa, 226. We are constrained to hold, however, that a policy did issue upon the application, that this was returned to Cranshaw and by Cranshaw forwarded to the life insurance company as additional security to said company either upon plaintiff's express direction or with his subsequent approval and consent. As a policy was so issued which contained the condition already referred to that policy became void because of the execution of the Harrington mortgage, unless plaintiff has shown a waiver by the defendant company or an estoppel on its part from setting up this breach of condition.

2. Insurance: issuance of policy.

Returning again to plaintiff's plea of waiver and estoppel, it will be noted that it does not plead that the agent, Cranshaw, knew when he took plaintiff's application that it was then contemplated by him (plaintiff) that he would presently make an additional loan upon his real property. That is the proposition argued by plaintiff's counsel, but this seems to be beside the mark. We may, however, for the purposes of the case, assume that the issue is tendered, and still it

3. Same: waiver of forfeiture: authority of agent.

does not in any manner aid the plaintiff. It is true that plaintiff said to Cranshaw that he wanted a $7,000 loan; but he (Cranshaw) said he could not place to exceed $5,000. Plaintiff then said that he could get $2,000 at home by putting a mortgage upon the land, to which Cranshaw responded that he did not object to that at all. There was talk between them as to what the land would carry, but Cranshaw did not want more than $5,000 for his company. Plaintiff, however, told Cranshaw that he would get an additional loan from some home company or home people. The policy in suit was taken out solely with reference to the life insurance company loan at Cranshaw's solicitation and request, and the policy was forwarded to the life insurance company. The Harrington mortgage was not issued until about eleven months after the delivery of the policy. Cranshaw did not attempt to procure more than a $5,000 loan, and he undertook to procure an $1,800 policy of insurance as security for that loan. He may have known that it was plaintiff's intention to thereafter make another loan of $2,000; but he (Cranshaw) did not undertake to get it for him, nor did he know when, if ever, such a loan would be made. Surely there was nothing to indicate that this additional loan was to be presently secured, and in fact it was not. The placing of the subsequent mortgage upon the property was a clear violation of the terms of the policy, and Cranshaw had no authority to promise in advance that this subsequent breach of condition would be waived.

The case in this respect is clearly ruled by *Wensel v. Insurance Co.,* 129 Iowa, 295, where it is said: "After much controversy and doubt regarding the rule for such cases, we have settled these two propositions in some of our recent opinions: The first is that, if an agent of an insurance company has knowledge of past conditions or existing facts avoiding a policy which is secured by him, by reason of such facts being within certain prohibitions which presently avoid the policy, the company issuing the policy with

this knowledge on the part of its agent can not insist upon these facts for the purpose of avoiding liability. · Second, knowledge of a soliciting agent of the future intentions of the insured as to violating some of the conditions of a policy as written is not binding upon the insured and can not be relied upon, for the purpose of avoiding the terms and conditions of the policy as issued." See, also, *Cornelius v. Insurance Co.,* 113 Iowa, 183. These cases very clearly distinguish those relied upon by appellant, such as *Independent School Dist. v. Insurance Co.,* 113 Iowa, 65; *Erb v. Insurance Co.,* 99 Iowa, 728, and *Fitchner v. Ass'n,* 103 Iowa, 276. In each case the assured was to presently take out additional and concurrent insurance to the knowledge of the agent. In the instant case plaintiff disclosed no such intent to Cranshaw, and in fact did not have it, or, if he did, it was conditional, for he did not make the additional loan until nearly a year after the issuance of the policy. Cranshaw would not loan more than $5,000 for his company, and he did not promise nor attempt to procure any more from any one. This was plaintiff's thought, and he did not indicate an intent to presently make such loan. Indeed, for that matter, he might never have placed an additional loan, at least he indicated no purpose of doing so presently. Whatever plaintiff's intentions, they related solely to the future, and Cranshaw who, as we believe, was nothing more than a soliciting agent, had no authority to waive any of the conditions of the policy. That the exact matter pleaded by plaintiff in reply constituted no waiver of a breach of the condition of the policy is plain. Indeed, plaintiff's counsel do not claim in argument that it did.

·They rely to some extent upon the thought that defendant did not introduce the policy issued by it or any form of policy usually issued. This is an extremely technical point and to our minds without merit. It is true they did not produce the policy issued, for that was not in their possession.

4. APPEAL: objections not raised below.

They did produce a copy of their usual form of policy, and this was identified and used by counsel as if properly introduced, and the case was tried on the theory that it was so introduced. .It was treated as introduced on the trial before the lower court, and upon this appeal it should be so considered.

The judgment seems to be right, and it is *affirmed.*
EVANS, C. J., taking no part.